**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **John J. Warren,** *et al.***,** | ) | **CASE NO. 1:07 CV 3695** |
| | ) | |
| **Plaintiffs,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **Federal Insurance Co.,** *et al.***,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |


### INTRODUCTION

This matter is before the Court upon  Defendant Federal Insurance Company's Motion

for Summary Judgment (Doc. 20) and Plaintiffs' Motion for Partial Summary Judgment (Doc.

21).  Also pending are Defendant's Motion to Strike Portions of the Affidavit of John Warren

(Doc. 24) and Defendant's Motion to Strike the Affidavit of Wallace Clements Or, in the

Alternative, to Strike Statements Contained in Paragraphs 4-10 Thereof (Doc. 25).  This is an

insurance dispute.  For the reasons that follow, Defendant's Motion for Summary Judgment is

GRANTED and Plaintiffs' Motion for Partial Summary Judgment is DENIED.  The motions to

1

strike are DENIED as MOOT.

**FACTS**

Plaintiffs, John and James Warren, filed this lawsuit against defendants, Federal Insurance Company and Chubb Group Insurance Co.[1], alleging entitlement to insurance coverage.  The facts of this case are largely undisputed and only those facts necessary for a resolution of the instant motion are set forth herein.

Plaintiffs, through a limited liability company, owned a 50% interest in BIS Holdings, LLC ("BISH").  The George F. Hofmeister Family Trusts ("Hofmeister") owned the remaining 50%.  BISH is a holding company that held all of the membership interests in Prime Measurement Products, LLC ("Prime").  Plaintiffs were officers and directors of both BISH and Prime.

On February 24, 2004, Prime obtained a revolving line of credit from PNC Bank, N.A. ("PNC").  Plaintiffs each signed a personal guaranty.  The personal guaranty contained a cognovit provision, which is tantamount to a confession of judgment.  In addition, BISH obtained a comprehensive insurance policy from defendant.  The policy covered BISH and its subsidiaries, including Prime, and was effective from July 1, 2005 through August 1, 2006.  The policy provided directors and officers ("D&O") liability coverage.

It appears that in May of 2005, plaintiffs' interest in Prime ceased.  Plaintiffs continued to serve as officers of Prime until July 25, 2005, after which Hofmeister controlled the company.  Shortly thereafter, PNC advised plaintiffs that certain events of default occurred pursuant to the

---

[1]     This case was removed to this Court from state court.  Prior to removal, plaintiffs voluntarily dismissed Chubb from this lawsuit.

2

revolving line of credit. As such, PNC demanded that plaintiffs fulfill their obligations under the

guaranty.  Plaintiffs refused and, in January of 2006, PNC filed a complaint in state court.  The

complaint contained only six paragraphs and sought payment on the guaranty.  There were no

allegations relating to any alleged misrepresentation or other improper actions on the part of

plaintiffs.  Because of the cognovit provision in the guaranty agreement, judgment was

automatically entered against plaintiffs in the amount of $700,000.  In February of 2006,

plaintiffs sought a stay of execution on the judgment and subsequently sought to vacate the

judgment.

On March 22, 2006, PNC sent plaintiffs a letter regarding various issues relating to the

dispute.  The vast majority of the letter addresses issues relating to the guaranty.  In addition,

however, the letter states as follows,

> In addition to your clients' liability to PNC as set forth above (under the guaranty and
> with respect to the purchase of their interest in BIS Holdings) we believe that the
> Warrens were responsible for misrepresentations regarding Prime's inventory which
> affected (a) the borrowing base certificates provided to PNC, and (b) Prime's financial
> statements upon which PNC relied.  We are currently evaluating PNC's rights and
> remedies with respect to these misrepresentations.

On April 6, 2006, plaintiffs' counsel sent a letter to Prime indicating that PNC had

provided written notice alleging that plaintiffs were responsible for misrepresentations.  In

essence, the April 6th letter outlined the allegations in PNC's letter of March 22nd.  It appears

that Prime contacted Hylant, an insurance broker, regarding the contents of the letter.  Shortly

thereafter, Hylant notified defendant through its electronic claim system.  The notification

essentially reiterates the contents of the April 6th letter.  Defendant contacted plaintiff's counsel

and requested certain information, including copies of the guaranty agreement and court

pleadings.  On May 16, 2006, plaintiffs' counsel sent a second letter to Prime regarding

3

insurance coverage.  In that letter, counsel indicates that plaintiffs are incurring defense costs related to PNC's allegations regarding financial misrepresentation.  It is not clear whether Prime forwarded this letter to defendant.  On May 19, 2006, plaintiffs' counsel sent defendant a letter enclosing the requested information.  In addition, the letter states that the court documents "demonstrate that in defense to this litigation, the [plaintiffs] are incurring defense costs to address matters that are intertwined with the matters associated with PNC's allegations that the [plaintiffs] misrepresented certain financial information...."

On August 8, 2006, defendant denied coverage.  Defendant took the position that the state court complaint states a claim for breach of contract.  Because it does not allege anything constituting a "wrongful act" under the policy, coverage was not available.  In addition, defendant claimed that the cognovit nature of the guaranty also precluded coverage.  Because PNC need only execute on the judgment, and plaintiffs were prohibited from raising any defenses, the signing of the guaranty amounted to a breach of the policy provision prohibiting settlement without defendant's consent.

Ultimately, PNC and plaintiffs entered into mediation and resolved the underlying dispute.  The settlement agreement expressly provides that PNC "alleges that [plaintiffs committed certain malfeasance while officers and/or agents of Prime...."  In addition, the settlement agreement indicates that of the $350,000 payment, $300,000 was allocated to "claims asserted by PNC...for accounting irregularities...."[2]

---

[2]        Plaintiffs present evidence, largely in the form of affidavits, indicating that the underlying litigation between PNC and plaintiffs included PNC's claims of malfeasance.  Defendant moves to strike various parts of the affidavits of John Warren and Wallace Clements, a vice-president of PNC.  The Court, however,

Thereafter, plaintiffs filed this lawsuit asserting three claims for relief.  Count one is a claim for breach of contract.  Count two is a claim for bad faith and count three seeks a declaratory judgment.  The parties cross-move for summary judgment and both motions are opposed.

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

---

need not reach these motions for a resolution of the parties' motions for summary judgment.

5

> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## **ANALYSIS**

1. Breach of contract/declaratory judgment

The insuring clause of the policy provides as follows,

> The Company shall pay Loss on behalf of the Insured Persons resulting from any D&O
> Claim first made against such Insured Persons during the Policy Period, or any applicable
> Extended Reporting Period, for Wrongful Acts, but only to the extent the Insured
> Organization does not indemnify the Insured Person for such Loss.

The parties do not dispute that plaintiffs are "Insured Persons" or that the loss occurred during the "Policy Period."  Rather, this dispute centers on whether a "D&O Claim" was made. A "D&O Claim" is defined, in relevant part, as follows,

> (a) a written demand for monetary damages or non-monetary relief;

> (b) a civil proceeding commenced by the service of a complaint or similar pleading;

> \*\*\*

against an Insured for a Wrongful Act, including any appeal therefrom.

Plaintiffs argue that the March 22nd letter from PNC to plaintiffs, which was forwarded to defendant, constitutes a "D&O Claim" as defined under subpart (a).  In addition, plaintiffs are

6

claiming that the underlying lawsuit involved allegations of financial malfeasance that were

intertwined with the claim on the cognovit guaranty.  Therefore, they argue that a "D&O Claim"

was made pursuant to subpart (b).  Defendant argues that neither of these constitutes a "D&O

Claim" for purposes of defense coverage or indemnity.  Each will be addressed in turn.

><u>March 22nd letter</u>
>
>The March 22nd letter provides as follows,
>
>>In addition to your clients' liability to PNC as set forth above (under the guaranty and with respect to the purchase of their interest in BIS Holdings) we believe that the Warrens were responsible for misrepresentations regarding Prime's inventory which affected (a) the borrowing base certificates provided to PNC, and (b) Prime's financial statements upon which PNC relied. *We are currently evaluating PNC's rights and remedies with respect to these misrepresentations.*

(Emphasis added).

Plaintiffs argue that this letter constitutes a "demand" for "monetary damages."

Defendant, on the other hand, claims that the letter unequivocally provides that PNC has not yet

made a demand for monetary damages.  Because the letter indicates that PNC is "currently

evaluating" its rights, the letter cannot be a current demand.  In reply, plaintiffs argue that in a

lawsuit brought in Pennsylvania, defendant argued that language similar to that contained in the

March 22nd letter constituted a "D&O Claim."

Upon review, the Court finds that the March 22nd letter is not a D&O Claim as that term

is defined in the policy.  On its face, the language plainly provides that PNC is "currently

evaluating" its rights and remedies.  If PNC is "currently evaluating" its rights, it logically

follows that PNC has not yet made a demand in that the two concepts are mutually exclusive.  In

addition, the plain language does not contain a demand for "monetary damages," either explicitly

or implicitly.  Further, the Court has reviewed the language at issue in the Pennsylvania lawsuit

and concludes that it is markedly different from the language contained in the March 22nd

letter.[3]  Therefore, defendant is not estopped from asserting that the March 22nd letter is not a

"D&O Claim."

Plaintiffs also argue that the March 22nd letter cannot be viewed in a vacuum.

According to plaintiffs, PNC sent an email to plaintiffs on April 28th, which confirmed that

PNC's March 22nd letter constitutes a "D&O Claim."  The April 28th email provides, in

relevant part,

> The proposal is rejected.  The Warrens have substantial liability to PNC ($700,000 plus
> claims I've outlined in prior correspondence with you) and cannot buy out for $100,000.
> PNC intends to press all of its claims against the Warrens....

According to plaintiffs, this email indicates that PNC has, in fact, made a demand against

plaintiffs.  In addition, plaintiffs point to the affidavit of one of PNC's representatives, who

testifies that PNC "made a claim" against plaintiffs in the March 22nd letter.  The Court rejects

plaintiffs' arguments.  Plaintiffs fail to provide any evidence that the April 28th email was

provided to defendant.   Moreover, PNC's affidavit, which characterizes the March 22nd letter as

a "claim," is a legal conclusion that is not admissible.

Plaintiffs also argue that the policy contains a provision regarding potential claims.  The

policy provides,

VII.    Reporting

---

[3]      For example, the letter at issue in that lawsuit provides, "our
clients individually and collectively have suffered serious
damage....  If you are interested in an amicable resolution of these
issues, please contact me immediately.  Otherwise, we will
proceed to protect the interests of our clients and to seek the full
measure of damages...."  Unlike this letter, the March 22nd letter
provides that PNC was still evaluating its rights and remedies.

8

(A) Solely with respect to any Liability Coverage Section:

***

(2) If during the Policy Period..., an Insured...becomes aware of circumstances which could give rise to any Claim..., and gives written notice of such...circumstances to the Company as soon as practicable thereafter but before the expiration or cancellation of this Policy, then any Claim subsequently arising from such...circumstances shall be considered to have been made against the Insured during the Policy Year in which the...circumstances were first reported to the Company.

Plaintiffs argue that, to the extent that the correspondence received by defendant did not meet the definition of "D&O Claim," the correspondence satisfies this provision.  According to plaintiffs, the policy does not dictate what plaintiffs must do after notifying defendant of a potential claim.  As such, the policy must be construed against defendant and in favor of plaintiffs.  Defendant argues that plaintiffs omit the first paragraph in the preceding section, which expressly states that plaintiffs must provide notice of any Claim.  Thus, even if the correspondence falls within subpart (2), which addresses potential future claims, plaintiffs were nonetheless obligated to provide notice of the *actual* claim when it arose.  Because plaintiffs failed in this regard, plaintiffs' argument must be rejected.

Upon review, the Court agrees with defendant.  The provision relied on by plaintiffs addresses a situation whereupon an insured is aware of a potential claim, but no actual claim is made during the policy period.  In such a situation, the insured may give written notice of the potential claim and, in the event the potential claim ripens into an actual claim, the policy will provide coverage even if the actual claim is made outside of the policy period.  Defendant is correct, however, that there is no provision that excuses an insured from the policy provision requiring notice to defendant of the *actual* claim.  The reporting provision explicitly requires that

9

an insured "as a condition precedent to exercising their rights under any Liability Coverage Section, give the Company written notice as soon as practicable of any Claim." Thus, even accepting plaintiffs' argument that the correspondence constitutes notice of a potential claim, plaintiffs fail to provide any evidence that they notified defendant of PNC's actual claim. Accordingly, the argument is rejected.

The underlying lawsuit

Plaintiffs argues that PNC made a "D&O Claim" against them under Subpart (b) of the Policy's definition, which requires a "civil proceeding commenced by the service of a complaint or similar pleading...against an Insured for a Wrongful Act...." Plaintiffs argue that, although the complaint states only a claim on the cognovit guaranty, PNC intertwined this claim with allegations of accounting malfeasance. As such, plaintiffs argue that the definition of "D&O Claim" is satisfied. In response, defendant argues that the complaint clearly states a claim that is not covered under the policy. As such, defendant properly denied both defense and indemnity coverage.

It is well settled that "the duty to defend need not arise solely from the allegations in the complaint but may arise at a point subsequent to the filing of the complaint." *City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 557 (Ohio 1984). However, this duty only arises if, on the face of the complaint, the allegations state a claim that is either "potentially or arguably" covered under the policy. *Wedge Products, Inc. v. Hartford Equity Sales Co.*, 509 N.E.2d 74, 76 (Ohio 1987). *See also, Holloway Sportswear, Inc. v. Transportation Ins. Co.*, unreported, 58 Fed. Appx. 172, 174 (6th Cir. 2003); *Motorists Mut. Ins. Co. v. National Dairy Herd Improvement Ass'n, Inc.*, 750 N.E.2d 1169, (Oh. Ct. App. 10th Dist. 2001)(no duty to look beyond complaint

10

where complaint contains no claim even arguably covered under policy).  Thus, unless the complaint contains a claim that is either arguably or potentially within the scope of coverage, the trial court may not go "beyond the four corners of the complaint" to determine whether a duty to defend exists.

In this case, the underlying complaint contains one cause of action.  It is undisputed that the claim asserted by PNC consists of a suit to recover pursuant to the cognovit guaranty.  There are no other claims or allegations contained in the underlying complaint.  In the briefing regarding the instant motions, plaintiffs admit that there is no coverage for this claim.  The Court concludes that the allegations in the complaint do not state a claim either "arguably or potentially" within the scope of coverage.  As such, defendant had no duty to defend.

Plaintiffs argue that the claim for accounting malfeasance was "intertwined" with the claim on the cognovit guaranty.  According to plaintiffs, Ohio law imposes a duty to defend where at least one claim is covered, even if the other claim is wholly beyond the coverage of the policy.  Plaintiffs, however, point to no case law in which the "covered claim" is a non-pled claim that is wholly unrelated in any way to the claim actually asserted.  The Court concludes that Ohio law would not impose a duty to defend in such a situation.  This is especially so given that the claim PNC actually asserted against plaintiffs sought recovery under a cognovit guaranty, which, by definition, includes a confession of judgment.[4]

─────────────

[4]     Because the underlying complaint does not state a claim even arguably covered under the policy, the Court need not reach whether the affidavits of John Warren and Wallace Clements are proper.  Regardless of how the parties characterized the state court lawsuit, the underlying complaint simply does not state a claim for which there is arguably a duty to defend.  Therefore, under Ohio law, the Court need not consider evidence outside of the four

11

Having concluded that plaintiffs' claim for failure to defend lacks merit, the Court also finds that plaintiffs are not entitled to indemnification for the $550,000 they allege constitutes the "loss."[5]  Plaintiffs make no new arguments in support of indemnification that were not already rejected by the Court in the context of defendant's duty to defend.  Accordingly, defendant is entitled to summary judgment on counts one and three of the complaint.

2. Bad faith

Defendant moves for summary judgment on count two of the complaint.  According to defendant, in the event the Court concludes that no coverage exists, the bad faith claim should be dismissed.  Plaintiffs do not oppose defendant's motion as to bad faith.  As such, defendant is entitled to summary judgment on count two.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendant Federal Insurance Company's Motion for Summary Judgment (Doc. 20) is GRANTED and Plaintiffs' Motion for Partial Summary Judgment (Doc. 21) is DENIED.  Defendant's Motion to Strike Portions of the Affidavit of John Warren (Doc. 24) and Defendant's Motion to Strike the Affidavit of Wallace Clements Or, in the Alternative, to Strike Statements Contained in Paragraphs 4-10 Thereof (Doc. 25) are DENIED AS MOOT.

---

corners of the complaint in order to make a determination as to defendant's duty to defend.

[5]     The Court is somewhat disturbed that plaintiffs are seeking insurance coverage for the *vast majority* of the amount paid to PNC pursuant to the settlement agreement.  It is surprising, to say the least, that so little of the amount was designated as payment under the guaranty, even though that claim is undoubtedly easier to litigate.  This is especially so given that PNC did not even assert a claim for accounting malfeasance.

12

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 8/21/08